# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

PAULICKIA JAZZMUN HAIRSTON,

        *Plaintiff,*

V.

B.K. TALLEY, *in his individual and official capacities*, BRIAN K. TALLEY, *in his individual and official capacities*, JEROME PALMENTERI, *in his individual and official capacities*, CHIEF WAYNE SCOTT, *in his individual and official capacities,* CHIEF BRIAN L. JAMES, in his individual and official capacities and as successor to CHIEF WAYNE SCOTT, GREENSBORO POLICE DEPARTMENT, CITY OF GREENSBORO, ROBERT ENOCHS, in his individual and official capacities, AVERY CRUMP, in her individual and official capacities, and the STATE of NORTH CAROLINA,

        *Defendants.*

**Civil Action**
**No. 22 CV 500**

**C O M P L A I N T**
**TRIAL BY JURY REQUESTED**

  NOW COMES Plaintiff PAULICKIA JAZZMUN HAIRSTON, through counsel, and hereby complains of the defendants as follows:

## STATEMENT OF JURISDICTION

1. Plaintiff invokes the original jurisdiction of this Court to hear and decide claims arising out of federal law in addition to ancillary claims involving the law of the State of North Carolina. The jurisdiction of this Court is invoked pursuant to Title 28 USC §1343(3) and 28 U.S.C. §1343(3). This lawsuit is brought under 42 U.S.C. §1983 to redress the

1

deprivation of Plaintiff PAULICKIA JAZZMUN HAIRSTON'S constitutional rights, including those protected by the Fourth, Fifth, and Fourteenth Amendments. All defendants are alleged to have acted under color of North Carolina state law. This action is also one for attorneys' fees under 42 U.S.C. § 1988.

2. Venue is proper in the United States District Court under 28 U.S.C. § 1391 (b) (2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district

3. This court has supplemental pendent jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## PARTIES

4. Plaintiff PAULICKIA JAZZMUN HAIRSTON is a citizen and resident of the city of Greensboro, Guilford County, North Carolina.

5. Upon information and belief, Defendant Officer B.K TALLEY, full name believed to be BRIAN K. TALLEY (hereinafter referred to as "TALLEY"), is a citizen and resident of Greensboro, Guilford County, North Carolina. Defendant TALLEY was at all times a duly sworn police officer employed by the City of Greensboro, Greensboro Police Department. TALLEY acted at all times under color of North Carolina state law in his capacity as agent and employee of the defendants GREENSBORO POLICE DEPARTMENT (hereinafter GPD") and CITY OF GREENSBORO. These two entities are hereinafter jointly referred to as the GREENSBORO DEFENDANTS.

6. Upon information and belief, defendant JEROME PALMENTERI is a citizen and resident of Greensboro, Guilford County, North Carolina. PALMENTERI was at all times an investigator employed by the GREENSBORO DEFENDANTS. PALMENTERI acted at

2

all times under color of North Carolina state law in his capacity as agent and employee of the GREENSBORO DEFENDANTS.

7. Upon information and belief, defendant CHIEF WAYNE SCOTT (hereinafter referred to as "CHIEF SCOTT"), is a citizen and resident of Greensboro, Guilford County, North Carolina. CHIEF SCOTT was at all times relevant to these proceedings employed as Chief of Police of defendants GPD and the GREENSBORO DEFENDANTS. CHIEF SCOTT acted at all times under color of North Carolina state law in his capacity as agent and employee of the GREENSBORO DEFENDANTS.

8. Upon information and belief, defendant CHIEF BRIAN L. JAMES (hereinafter referred to as "CHIEF JAMES") is a citizen and resident of Greensboro, Guilford County, North Carolina. Upon further information and belief, CHIEF JAMES is the successor to CHIEF SCOTT at the GPD and is accordingly charged with all liability of CHIEF SCOTT which is imputed to him by operation of law. CHIEF JAMES was at all times acting under color of North Carolina state law in his capacity as agent and employee of the GREENSBORO DEFENDANTS.

9. At all times relevant to this Complaint, CHIEF SCOTT was responsible for properly training, supervising, managing, and otherwise overseeing the various officers and employees working for defendants GPD who in turn were employees and agents of the GREENSBORO DEFENDANTS. He was directly responsible for the actions of all officers and employees under his authority including those named as individual defendants in this action.

10. Defendant CITY OF GREENSBORO is a municipal corporation organized and existing under the laws of the State of North Carolina. At all times relevant hereto, defendant CITY

3

OF GREENSBORO, acting through the GPD, was responsible for all GPD operations including but not limited to responsibility for the appointment, training, supervision, discipline and retention and conduct of all GPD personnel as well as the establishment of proper rules, protocols, management, and oversight for how those personnel operated. Defendant CITY OF GREENSBORO was responsible for enforcing the rules of the GPD and for ensuring that GPD personnel obeyed the laws of the United States and the State of North Carolina. All acts and omissions of the GPD are imputed to the CITY OF GREENSBORO by agency principles and/or are in fact the actions of the CITY OF GREENSBORO itself because the CITY OF GREENSBORO runs, established, and controls defendant GPD as the CITY OF GREENSBORO's means of providing policing services.

11. Defendants CITY OF GREENSBORO and GPD (collectively "the GREESNBORO DEFENDANTS") acted at all times under color of North Carolina state law.

12. Upon information and belief, Defendant ROBERT ENOCHS is a citizen and resident of Guilford County, North Carolina. ENOCHS was at all times acting in his capacity as agent and employee for defendant STATE OF NORTH CAROLINA in his role of Assistant District Attorney, Guilford County District Attorney's Office. ENOCHS acted at all times under color of North Carolina state law.

13. Upon information and belief, Defendant AVERY CRUMP is a citizen and resident of Guilford County, North Carolina. CRUMP acted at all times under color of North Carolina State law as the elected District Attorney for the County of Guilford on behalf of defendant STATE OF NORTH CAROLINA.

4

14. All acts and omissions committed by Defendants ENOCHS and CRUMP were committed in the course and scope of their employment with defendant STATE OF NORTH CAROLINA as Assistant District Attorney and Elected District Attorney for Guilford County, respectively, and as such all acts and omissions committed by said defendants are imputed to Defendant STATE OF NORTH CAROLINA pursuant to respondeat superior and other agency principles.

15. Defendants STATE OF NORTH CAROLINA, ENOCHS, and CRUMP are subject to suit under both 42 U.S.C. §1983 and the North Carolina State Tort Claims Act for the acts and omissions of its employees ENOCHS and CRUMP, as more particularly described herein. None of these defendants have any immunity available to them.

16. Each individual defendant, through the particular acts and omissions each has committed as described herein, has waived any qualified immunity that might otherwise be available to him and/or such qualified immunity is inapplicable by operation of law.

17. The GREENSBORO defendants, TALLEY, SCOTT, JAMES, and PALMENTERI have no immunity from the 42 U.S.C. section §1983 claims. Upon information and belief, these defendants also have no immunity for the Plaintiff's state law claims because the GREENSBORO defendants have either (1) purchased liability insurance and thereby waived any available governmental immunity pursuant to N.C.G.S. §160A-485; (2) entered into a governmental risk pool that has waived governmental immunity pursuant to N.C.G.S. §160 A-485; or (3) enacted a City Council Resolution waiving the application of governmental immunity to the claims asserted in this lawsuit.

## FACTS

18. On July 6, 2019, Plaintiff HAIRSTON drove to the Willomore Street apartments at 1808 Willomore Street with a friend, Chad D. Vaughn, Jr., in a car driven by Plaintiff. Plaintiff and Vaughn were accompanied by several other friends including Michael B. Mills, Jacqueline R. Whitaker and Niasia Hightower. The purpose of the visit was for Chad Vaughn, Jr., a former resident of an apartment at the complex, to retrieve certain items of personal property that belonged to him.

19. While at the Willomore Street apartments, Chad Vaughn, Jr. became involved in a verbal dispute with a former neighbor named Melanie Carter. The dispute was over a punching bag or other property that Mr. Vaughn was told that Melanie Carter had taken and sold without Mr. Vaughn's permission. Several people were standing around the apartment complex drinking heavily when the discussion between Mr. Vaughn and Ms. Carter began. During this verbal dispute Carter's adult son struck Niasia Hightower in the face. Someone in the crowd then announced that the police had been called. On hearing this, the crowd began to disperse.

20. Upon information and belief, GPD dispatch received a call from someone at the Willomore Street apartments indicating that a "disturbance" was occurring. Three GPD officers responded to this disturbance call, namely officers TALLEY, Neiers, and Roscoe. The three officers had no information or reason to believe that anyone involved in the "disturbance" had committed any crime. They only knew that a disturbance was occurring. The three likewise had no information or evidence suggesting that anyone should be arrested. They went to the Willomore Street apartments only to see what was happening.

21. By the time the three officers arrived, plaintiff HAIRSTON and her party had decided to leave the apartments and were already in Plaintiff's car and in the process of leaving.

22. As plaintiff HAIRSTON was driving towards the exit of the cul-de-sac of the apartments, an officer standing behind her car (now believed to be Officer Roscoe) called out for her to stop. That officer used his hand to knock on the back of Plaintiff's car. Plaintiff was afraid and knew that she had done nothing wrong that warranted police detaining either her or anyone else in her group. Plaintiff, who had not been involved in any verbal "disturbance", wanted nothing to do with any of it and therefore determined to leave the apartments and continued driving away.

23. When Plaintiff drove away no crime had in fact been committed by anyone in Plaintiff's vehicle. Indeed, after the incident described in this Complaint occurred no one was ever arrested or charged with any crime for anything having to do with the verbal disturbance to which the officers were responding. It follows that at no time during the incident described herein did Defendant TALLEY or any other officer ever have probable cause to believe that any crime had been committed.

24. As Plaintiff drove toward the apartment cul-de-sac exit, Defendant TALLEY, who was standing near the exit, determined to stop her from leaving.

25. When Plaintiff HAIRSTON did not stop her vehicle and instead drove past Defendant TALLEY to leave, Defendant TALLEY fired his service weapon at Plaintiff from behind. More particularly, Defendant TALLEY shot at Plaintiff three times including through the driver's side window of her car from a rear angle that sent the bullet through the back of Plaintiff's head, through her brain, and out through her teeth obliterating her mouth. The bullet lodged in the speedometer under the steering wheel.

26. Soon after the shooting occurred, Defendant TALLEY falsely told police investigators, including but not limited to Defendant PALMENTERI, that he fired his weapon through the front windshield of Plaintiff's vehicle in self-defense because Plaintiff was driving at him to run him over. This claim was obviously false because the irrefutable physical evidence gathered by the GREENSBORO DEFENDANTS and PALMENTERI themselves proved that the trajectory path of the bullet was from behind Plaintiff through the driver's side window through the back of Plaintiff's head and into the speedometer in front of Plaintiff.

27. At all times after the shooting happened the GREENSBORO DEFENDANTS and PALMENTERI knew (1) that TALLEY had shot Plaintiff HAIRSTON after she had driven past him, and (2) that TALLEY was not in a self-defense position when he fired at her from behind.

28. Because Defendant TALLEY was not in self-defense position when he shot Plaintiff, he was prohibited from using lethal force against Plaintiff after she drove past him.

29. When Defendant TALLEY shot Plaintiff HAIRSTON from behind through the back of the head, neither Plaintiff nor anyone in her vehicle was threatening Defendant TALLEY in any way. Neither Plaintiff nor anyone in her vehicle was pointing a firearm at Defendant TALLEY or threatening to point a firearm at him.

30. Defendant TALLEY's action in shooting Plaintiff through the back of the head when she had driven past him directly violated lethal force rules applicable to law enforcement generally and use of lethal force rules enacted by the GREENSBORO DEFENDANTS specifically. An officer is never authorized to shoot into a moving car that is going past or

has gone past that officer. Doing so is a violation of the victim's constitutional rights as a matter of law.

31. The wrongful actions of defendant TALLEY directly violated the GREENSBORO DEFENDANTS' Greensboro Police Departmental Directives which provide as follows:

> Officers will not fire any weapon from or at a moving vehicle except to counter an imminent threat of death or serious physical injury to the officer or another person and no other means are reasonably available at that time to avoid or eliminate the danger. Officers must consider the below factors when determining if the use of force is justified:

1. An occupant of the vehicle is using or threatening to use lethal force by means other than the vehicle.
2. The vehicle is being operated in a manner deliberately intended to strike a person.
3. All other reasonable means of defense or escape (including taking cover or moving out of the path of the vehicle or other evasive action) have been exhausted, are not practical, or are not present.
4. Use of deadly force must cease after the vehicle no longer presents an immediate threat.

32. If Defendant TALLEY ever stepped in front of Plaintiff's oncoming vehicle such that he could be hit by the vehicle if he continued to stand there without moving out of the way, which is expressly denied, then all Defendant TALLEY had to do was step out of the way to avoid being in any danger. If TALLEY ever placed himself in front of the vehicle, then he did in fact step out of the way. He therefore had no right under the GREENSBORO DEFENDANTS' own departmental directives to shoot plaintiff through the back of the head through her driver's side window.

33. Defendant TALLEY shot at Plaintiff a total of three times when she had driven past him.

34. Defendant TALLEY falsely told police investigators, including Defendant PALMENTERI, that after firing through the front windshield (which was false as he actually shot from behind Plaintiff through the driver's side window) that he next assessed

9

the situation and decided to fire two additional rounds at Plaintiff because he was concerned for the safety of an additional officer who was approaching the scene. Upon information and belief, in truth TALLEY made no such assessment but simply fired two more rounds at Plaintiff to stop her from leaving. Upon further information and belief, no other officer was approaching the scene.

35. Upon information and belief, the GREENSBORO DEFENDANTS and Defendant PALMENTERI knew after the shooting that TALLEY'S claim that he continued firing at Plaintiff as she drove further away from him in order to protect another officer was false and unsupported by any evidence.

36. After being shot through the back of her head, Plaintiff HAIRSTON lost the ability to control her vehicle which proceeded to roll through a yard and into a tree.

37. Defendant PALMENTERI was at all relevant times employed as an investigator for the GREENSBORO DEFENDANTS. Upon information and belief, the GREENSBORO DEFENDANTS appointed defendant PALMENTERI as their lead investigator to examine and analyze the circumstances surrounding Defendant TALLEY'S shooting of Plaintiff HAIRSTON and to reach conclusions about the shooting.

38. Defendant PALMENTERI ultimately communicated with the Guilford County District Attorney and acted for the GREENSBORO DEFENDANTS in unlawfully requesting that the District Attorney bring a felony charge of assault on a police officer under N.C.G.S. §14-34.2 against Plaintiff HAIRSTON for allegedly deliberately trying to hit Defendant TALLEY with her car.

39. The investigation conducted by defendant PALMENTERI and the conclusions he reached were illegitimate and, upon information and belief, intended to exonerate defendant

TALLEY from responsibility for wrongfully shooting the Plaintiff in the back of the head, and by extension to protect the GREENSBORO DEFENDANTS, without regard to what the actual evidence showed.

40. When defendant PALMENTERI met with defendant STATE OF NORTH CAROLINA's employees at the Guilford County District Attorney's Office (believed to be defendant ENOCHS) and endorsed a felony charge against Plaintiff for allegedly trying to deliberately strike TALLEY with her vehicle, upon information and belief defendants PALMENTERI and GREENSBORO DEFENDANTS knew *at a minimum* each of the following:

    **a.** that when the three officers, including TALLEY, arrived at the scene in response to a verbal disturbance no evidence existed that any crime had been committed;

    **b.** that when the three officers arrived at the scene no evidence existed that Plaintiff HAIRSTON had committed any crime;

    **c.** that when the three officers arrived at the scene Defendant TALLEY had no reasonable articulable suspicion or probable cause to arrest anyone, including Plaintiff HAIRSTON;

    **d.** that Plaintiff HAIRSTON had driven her vehicle past Defendant TALLEY when TALLEY shot her;

    **e.** that the irrefutable physical evidence gathered by PALMENTERI and the GREENSBORO DEFENDANTS proved that that HAIRSTON had driven past TALLEY when he fired at her, *to wit*, the trajectory of the shot was from behind Plaintiff, through her head, and out through her teeth into the speedometer of the dashboard;

f.   that defendant TALLEY was not in a self-defense position when he shot Plaintiff in the back of the head;

g.   that defendant TALLEY falsely claimed that he fired through the front windshield of Plaintiff's vehicle in self-defense when in fact the physical evidence proved that shot Plaintiff from behind through the back of the head;

h.   that defendant TALLEY fired two additional rounds at Plaintiff after Plaintiff had driven further past TALLEY;

i.   that defendant TALLEY falsely claimed that he fired those two additional rounds because he was trying to protect an officer who did not exist;

j.   that if a self-defense situation ever existed for TALLEY, which it did not, then it ended when HAIRSTON drove past him;

k.   that once a driver has gone past an officer that officer has no right to shoot into a vehicle and that doing so in an improper use of lethal force;

l.   that the BWC (Body Worn Camera) footage showed that defendant TALLEY was not in a self-defense position and had no right to shoot the Plaintiff in the back of the head from behind her.

41. Defendant PALMENTERI ordered that a GPD Crash Reconstruction Team analyze the scene and prepare a conclusion on what happened.

42. Investigator A.D. Reed, acting within the course and scope of his employment for the GPD and the CITY OF GREENSBORO, responded to the scene on behalf of the GREENSBORO DEFENDANTS at the request of defendant PALMENTERI to complete a crash reconstruction analysis and reach a conclusion about what occurred.

43. Investigator Reed concluded that, "the crash was avoidable if Ms. Hairston would have reduced speed and not have accelerated so heavily." Reed reached this conclusion for and on behalf of the GREENSBORO DEFENDANTS.

44. The GREENSBORO DEFENDANTS and defendant PALMENTERI knew that Investigator Reed's conclusion was nonsensical. The accident did not happen because Plaintiff failed to reduce speed but rather happened because Defendant TALLEY shot Plaintiff in the back of the head causing plaintiff to lose the ability to control the vehicle.

45. The GREENSBORO DEFENDANTS and defendant PALMENTERI relied on the nonsensical conclusion of Investigator Reed in electing to refer and endorse a felony charge of assault on an officer against Plaintiff HAIRSTON, a charge the Guilford Greensboro District Attorney's Office made on behalf of defendant STATE OF NORTH CAROLINA.

46. Before requesting that the Guilford County District Attorney charge Plaintiff HAIRSTON with felony assault on an officer, the GREENSBORO DEFENDANTS and defendant PALMENTERI either viewed all available BWC video footage and knew from that footage did not support the conclusion that defendant TALLEY was in a self-defense position and entitled to shoot Plaintiff HAIRSTON in the back of the head, or the GREENSBORO DEFENDANTS should have reviewed the BWC which would have shown this.

47. The GREENSBORO DEFENDANTS' action in referring and endorsing a criminal charge against Plaintiff HAIRSTON for assault on an officer was wrongful, upon information and belief was for an improper purpose of protecting the GREENSBORO DEFENDANTS and defendant TALLEY, was a violation of Plaintiff HAIRSTON'S constitutional rights, led to the initiation of an unlawful and malicious prosecution, and was otherwise illegal.

48. Upon information and belief, the GREENSBORO DEFENDANTS and defendant PALMENTERI commenced their unlawful plan to cover up TALLEY'S illegal shooting of Plaintiff by posting an officer at the hospital with Plaintiff HAIRSTON and wrongfully handcuffing her to her hospital bed.

49. Defendants ROBERT ENOCHS and AVERY CRUMP, as employees of defendant STATE OF NORTH CAROLINA and acting in the capacities of Guildford County Assistant District Attorney and elected District Attorney respectively, wrongfully and illegally charged Plaintiff HAIRSTON with felony assault on a police officer.

50. Defendants ENOCHS and CRUMP and STATE OF NORTH CAROLINA, prior to charging Plaintiff, knew or should have known all of the information referenced in paragraph 40 above and knew or should have known that they lacked probable cause to charge Plaintiff HAIRSTON with felony assault on an officer.

51. Defendants ENOCHS and CRUMP and STATE OF NORTH CAROLINA knew or should have known that the BWC footage showed that Plaintiff had not committed felony assault on an officer, that TALLEY was not in a position of danger, and that TALLEY had acted unlawfully when he shot Plaintiff from behind.

52. Upon information and belief, defendants ENOCHS and CRUMP and STATE OF NORTH CAROLINA charged Plaintiff HAIRSTON with felony assault on a police officer in order to protect defendant TALLEY and the GREENSBORO DEFENDANTS by seeking to justify TALLEY's wrongful use of lethal force against Plaintiff.

53. Defendant ENOCHS, acting under color of North Carolina state law, acted in the course and scope of his employment as a prosecutor with defendant STATE OF NORTH CAROLINA in wrongfully filing and pursuing a felony charge against Plaintiff

14

HAIRSTON. Defendant CRUMP approved of and authorized that prosecution for defendant STATE OF NORTH CAROLINA and his wrongful actions are imputed to the defendant STATE OF NORTH CAROLINA.

54. Criminal defense counsel for Plaintiff HAIRSTON, as part of his defense of the Plaintiff, requested that defendants ENOCHS and CRUMP and STATE OF NORTH CAROLINA provide Plaintiff with access to the BWC footage. Defendants refused. Upon information and belief, defendants refused because they knew that the BWC footage showed that TALLEY was not entitled to use lethal force in shooting Plaintiff from behind and that no legitimate basis existed for prosecuting Plaintiff for felony assault on a police officer.

55. Criminal defense counsel was forced to file a motion to compel the production of the BWC footage in Plaintiff's felony case. Ultimately defendants ENOCHS, CRUMP, and the STATE OF NORTH CAROLINA elected to dismiss the felony charge against Plaintiff rather than provide counsel with that BWC footage.

56. Criminal defense counsel then filed a second motion relating to the BWC footage, namely a Petition for Release of Custodial Law Enforcement Agency Recording.

57. In response to the Petition, defendants ENOCHS, CRUMP, and the STATE OF NORTH CAROLINA apparently felt that they had no choice but to allow counsel access to the BWC footage, which they did. Access to the footage was strictly limited to seeing the video only at certain times at the GPD and without making any copies of the footage. These defendants, as well as the GREENSBORO DEFENDANTS, have however continued to refuse to produce the actual footage to Plaintiff's counsel.

58. As a direct and proximate result of the unlawful acts and omissions of defendants TALLEY, PALMENTERI, SCOTT, JAMES, and the GREENSBORO DEFENDANTS,

Plaintiff HAIRSTON suffered severe, disabling and deforming injuries to her face, mandible, orbit, brain, teeth, and other parts of her body that required extensive hospitalization and treatment. Plaintiff further sustained disabling emotional injuries including PTSD. Plaintiff additionally incurred medical expenses, will incur medical expenses in the future, sustained permanent injuries, experienced scarring, experienced and will continue to experience severe emotional distress, lost wages from her employment past present and future, experienced pain and suffering past present and future, and suffered other and further damages to be proved at trial.

59. The unlawful acts and omissions committed by defendants STATE OF NORTH CAROLINA, ROBERT ENOCHS, and AVERY CRUMP perpetuated the wrongs committed by the defendants referenced in the preceding paragraph and joined and concurred with that wrongdoing to proximately cause the damages described in the preceding paragraph. In addition to the injuries and damages referenced in the preceding paragraph proximately caused by all defendants, Plaintiff HAIRSTON also experienced additional damages as a direct and proximate result of the wrongful actions of the STATE OF NORTH CAROLINA, ENOCHS, and CRIMP. Those damages include severe emotional distress in being forced to endure an unlawful criminal prosecution after being shot in the back of the head, the worsening of existing severe emotional distress Plaintiff had already experienced from being shot in the back of the head, being barred from obtaining evidence that supported her legal rights against TALLEY and exonerated her of the criminal charge, and other and further damages to be proved at trial.

60. Upon information and belief, each defendant named in this lawsuit engaged in an unlawful conspiracy to deprive Plaintiff of her clearly established constitutional rights (Fourth, Fifth,

and Fourteenth) as well as other legal rights in order to protect TALLEY and the law enforcement defendants from fault and potential legal liability. Each defendant is therefore individually liable for every other defendant's unlawful acts and the damages caused thereby. Plaintiff is entitled to recover of all defendants, jointly and severally, for all damages she has sustained because of defendants' shared violation of her constitutional rights including but not limited to her Fourth Amendment rights.

61. Plaintiff's entitlement to recover of defendants for violating her constitutional rights, and the inapplicability of any qualified immunity for any of the defendants, is established by prevailing Federal law. *Williams v. Strickland*, 917 F.3d 763 (4th Cir. 2019) holds as follows:

> Officers had violated the Fourth Amendment to the extent that they started to use deadly force, or continued to use deadly force, once the car had driven past them i.e., once it was no longer reasonable for them to believe that the car was about to run them (or their fellow officers) over. This was true even though mere seconds separated the point at which deadly force was lawful to the point at which deadly force was unlawful. As we put it then [in prior case precedent of *Waterman v. Batten*], "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."

62. The decision in *Williams*, which follows and affirms its predecessor, *Waterman v. Batten*, 393 F.3d 471 (4th Cir. 2005), unambiguously confirms that a police officer who shoots a driver who is either in the process of driving past that officer or has driven past the officer, even if the driver had previously been driving directly at the officer, violates the driver's clearly established constitutional rights as a matter of law.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983 – Excessive Force in Violation of the Fourth Amendment, and Unlawful Prosecution in Violation of Fifth Amendment and Fourteenth Amendment (against all defendants)

17

63. Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if fully set forth herein.

64. Federal statute 42 U.S.C. § 1983 provides as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress….

65. All defendants named in this lawsuit qualify as persons for the purposes of 42 U.S.C § 1983. All defendants violated Plaintiff's clearly established constitutional rights and all are liable to Plaintiff under 42 U.S.C. §1983.

66. Defendants TALLEY, PALMENTERI, the GREENSBORO DEFENDANTS, JAMES, and SCOTT were all at all times acting under the color of North Carolina state law in their capacities as employees, investigators, chiefs of police, and in other roles for the GREENSBORO DEFENDANTS. Defendants STATE OF NORTH CAROLINA, ENOCHS, and CRUMP were likewise acting under the color of North Carolina state law in their capacities as prosecuting entity, Assistant District Attorney prosecutor, and elected District Attorney respectively. All defendants' acts and omissions were committed in their official capacities and within the scope of their employment with, respectively, the GREENSBORO DEFENDANTS and the STATE OF NORTH CAROLINA.

67. At the time of the events complained of, Plaintiff HAIRSTON had a clearly established constitutional right to be secure in her person from unreasonable seizure through excessive force. This specifically included the clearly established right to be free from being shot while driving past a police officer.

68. Plaintiff HAIRSTON also had the clearly established constitutional right under the Fourth Amendment to bodily integrity and to be free from excessive force by law enforcement.

69. Plaintiff HAIRSTON also had the clearly established constitutional right to be free from wrongful and malicious prosecution and to be afforded the right to obtain and see the evidence against her, the same being violations of her Fourth Amendment rights, her Fifth Amendment due process rights, and her Fourteenth Amendment due process rights.

70. Any reasonable law enforcement officer and law enforcement department, including TALLEY, the GREENSBORO DEFENDANTS, PALMENTERI, JAMES, and SCOTT, knew or should have known that Plaintiff had the constitutional rights referenced above and that those constitutional rights were clearly established and could not be infringed.

71. Any reasonable district attorney's office in North Carolina or in any other state, including prosecuting assistant district attorneys and elected district attorneys, knew or should have known that Plaintiff had the constitutional rights referenced above and that those constitutional rights were clearly established and could not be infringed.

72. Defendant TALLEY'S action in shooting Plaintiff HAIRSTON in the back of the head after she had passed him in her car was objectively unreasonable under the circumstances confronting TALLEY at the time. TALLEY was not in a self-defense position and was not entitled to use lethal force against Plaintiff and TALLEY'S action violated Plaintiff HAIRSTON's Fourth Amendment rights.

73. The various other acts and omissions of the GREENSBORO DEFENDANTS and defendant PALMENTERI detailed in paragraphs 26-48 above were unreasonable under the circumstances, and each act and omission constituted a violation of Plaintiff HAIRSTON's Fourth Amendment rights.

74. The actions of defendants STATE OF NORTH CAROLINA, ENOCHS, and CRUMP described above in paragraphs 49-60 of the Complaint were objectively unreasonable in light of the facts and circumstances involved and each act or omission violated Plaintiff's Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights.

75. The defendants' actions in using unlawful lethal force and pursuing an unlawful Prosecution against Plaintiff, said actions including each individual act and omission of each defendant detailed above in this Complaint, were malicious and undertaken with a reckless, callous, and deliberate indifference to Plaintiff HAIRSTON's clearly established constitutional rights.

76. Defendants TALLEY, GREENSBORO DEFENDANTS, SCOTT and JAMES unlawfully seized Plaintiff HAIRSTON in violation of her Fourth Amendment right to be free of unreasonable searches and seizures by means of objectively unreasonable, excessive and shocking physical force, *to wit*, shooting plaintiff in the back of the head when she had driven past TALLEY. Upon information and belief, defendant PALMENTERI committed the unlawful acts described herein to ultimately protect TALLEY from responsibility for committing constitutional violations against Plaintiff. PALMENTERI's actions were objectively unreasonable and a violation of 42 U.S.C. §1983.

77. Upon information and belief, defendants STATE OF NORTH CAROLINA, ENOCHS, and CRUMP maliciously prosecuted Plaintiff without probable cause in order to protect the other defendants from responsibility for their actions. Said malicious prosecution constitutes a violation of Plaintiff's clearly established constitutional rights including the right to be free of malicious prosecution, the right to due process under the Fifth and Fourteenth Amendments, and the right to be free of unlawful seizures of her person

20

pursuant to the Fourth Amendment. Defendants STATE OF NORTH CAROLINA, ENOCHS, and CRUMP's actions in barring Plaintiff from obtaining critical exonerating evidence constitutes also violated Plaintiff's clearly established constitutional rights including her due process rights.

78. The felony prosecution against Plaintiff was instituted without probable cause and maliciously for a purpose other than bringing Plaintiff to justice. That prosecution was terminated by the discharge of the Plaintiff in the form of a dismissed charge.

79. Upon information and belief, all defendants' actions in violating Plaintiff's clearly established constitutional rights were undertaken in concert with each other as part of a conspiracy to deprive Plaintiff of her constitutional rights, and each defendant is thus equally liable for the actions of every other defendant.

80. Upon information and belief, all defendants engaged in the conduct complained of willfully, maliciously, callously, in bad faith, and in reckless disregard and indifference of Plaintiff HAIRSTON's constitutional rights.

81. All defendants engaged in the conduct described in this Complaint with shocking and willful indifference to Plaintiff HAIRSTON's constitutional rights and, upon information and belief, with awareness that the conduct would cause severe injury and damage to Plaintiff HAIRSTON.

82. Because defendants knowingly violated Plaintiff HAIRSTON's clearly established constitutional rights in the many ways described above (including shooting her in the back of the head when she had driven past and then covering it up by prosecuting Plaintiff while barring her from obtaining exonerating evidence), defendants are not entitled to any qualified immunity.

83. The GREENSBORO DEFENDANTS, SCOTT, JAMES, and PALMENTERI knew or should have known that charging Plaintiff HAIRSTON with felony assault on a police officer, handcuffing her to a hospital bed after having shot her in the head, and upon information and belief covering up TALLEY's unlawful deadly force by reaching unwarranted conclusions about the shooting, would further violate Plaintiff's clearly established constitutional rights.

84. The acts and omissions of the defendants that violated Plaintiff HAIRSTON's clearly established constitutional rights proximately caused her injuries and damages as more fully described above.

85. Plaintiff HAIRSTON is entitled to recover compensatory, economic, consequential, and special damages of all defendants, jointly and severally, for defendants' violations of Plaintiff's constitutional rights under 42 U.S.C. §1983. Plaintiff is also entitled to recover punitive damages against each of the defendants under 42 U.S.C. §1983.

86. Plaintiff is entitled to recover her attorneys' fees from all defendants, jointly and severally, pursuant to 42 U.S.C §1988.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983-Deliberate Indifference**
**(against the Greensboro Defendants, Chief Wayne Scott, Chief Brian L. James, State of North Carolina, and District Attorney Crump)**

87. Plaintiff HAIRSTON realleges and incorporates by reference all previous paragraphs of the Complaint as if fully set forth herein.

88. Defendants GREENSBORO DEFENDANTS, CHIEF SCOTT, CHIEF JAMES, STATE OF NORTH CAROLINGA, and DISTRICT ATTORNEY CRUMP are all persons within the meaning of 42 USC §1983.

89. When they violated Plaintiff's protected constitutional rights under 42 U.S.C. §1983, the defendants referenced in the preceding paragraph were acting in their official capacities in the course and scope of their employment with the GREENSBORO DEFENDANTS and the STATE OF NORTH CAROLINA, respectively. Defendants were all acting under color of North Carolina state law.

90. When they violated Plaintiff's protected constitutional rights under 42 U.S.C. §1983, defendants TALLEY and PALMENTERI were following certain customs, policies, practices, and/or procedures promulgated by the GREENSBORO DEFENDANTS, SCOTT, and JAMES. More particularly, upon information and belief the GREENSBORO DEFENDANTS, SCOTT and JAMES directed, encouraged, allowed, and/or ratified the following practices that enabled TALLEY and PALMENTERI to act as they did in violating Plaintiff's constitutional rights:

    a.  tolerating the use of excessive and/or unjustified force by Greensboro police officers;

    b.  allowing officers to shoot into cars that are passing them or have passed them;

    c.  allowing officers to create unnecessary danger and risk of serious harm or death, with deliberate indifference to the harm that may come to unarmed and nonthreatening persons like Plaintiff HAIRSTON;

    d.  covering up the unlawful use of excessive force through self-serving investigations post-incident intended to protect officers and place blame on the victims of excessive force;

 e. encouraging a culture of blind support within the GPD for officers who have used excessive force while promoting a culture of assigning blame to the victims of excessive force;

 f. pursuing baseless criminal charges against the victims of excessive force as a means of exonerating the officers involved and assigning blame to the victims of excessive force;

 g. such other and further instances of institutional indifference and wrongdoing as will be revealed by discovery and proved at trial.

91. Upon information and belief, the GREENSBORO DEFENDANTS, SCOTT and JAMES failed to properly train officers and investigators to, among other things, to do the following:

 a. always avoid using lethal force unless the risk of serious harm or death to the officer at the actual moment is imminent, immediate, and unavoidable;

 b. carefully understand when the right to use lethal force exists and when it ends by focusing on the rule that the instant self-defense no longer exists the right to use lethal force no longer exists;

 c. never fire a weapon into a car that is passing or has passed the officer doing the firing;

 d. never fire a weapon at someone who is leaving the scene when the officer doing the firing is not facing imminent serious bodily harm or death;

 e. focus on acting in ways that protect the constitutional rights of citizens like Plaintiff rather than violating those rights;

f.  fairly and independently investigate instances of potential excessive and lethal force, and otherwise call out instances of excessive and lethal force;

g.  in every investigation of the police-involved shootings, avoid the temptation to reject evidence that implicates the officer and that exonerates the victim;

h.  do not refer the victim of potential excessive or lethal force for prosecution unless the evidence supporting such a prosecution is supported by convincing evidence;

i.  avoid protecting fellow officers after the fact who have used excessive or lethal force improperly;

j.  hold officers who use excessive force, including unwarranted lethal force, accountable;

k.  provide officers with clear, written rules on the use of lethal force including the rule that officers should never fire into cars that are in the process of passing or have passed by them; and

l.  train officers in other and further ways as shall be proved at trial.

92. When he violated Plaintiff's protected constitutional rights under 42 U.S.C. §1983, defendant ENOCHS was following certain customs, policies, practices, and/or procedures promulgated by defendants STATE OF NORTH CAROLINA and CRUMP. Upon information and belief, the STATE OF NORTH CAROLINA and CRUMP directed, encouraged, allowed, and/or ratified the following practices that enabled ENOCHS to act as he did in violating Plaintiff's constitutional rights:

a.  allowing prosecutors to institute prosecutions against persons like Plaintiff without probable cause;

b. allowing prosecutors to initiate prosecutions against persons like Plaintiff for the improper purpose of protecting police officers who may have used excessive force;

c. allowing prosecutors to withhold critical and potentially exonerating evidence from persons like Plaintiff who are being prosecuted after an interaction with a police officer;

d. allowing prosecutors to pursue prosecutions of persons accused of assaulting an officer without first reviewing all evidence relating to the incident involved, including BWC footage;

e. allowing prosecutors to pursue prosecutions against the victims of potential excessive force, including those who have been shot by police, without first reviewing all evidence including BWC footage;

f. allowing prosecutors to initiate prosecutions against persons involved in interactions with police, including persons who have been shot by police, with a plan to ultimately dismiss the charge if a court allows the criminal defendant to obtain the BWC footage;

g. allowing prosecutors to disrespect and/or ignore the constitutional rights of persons like Plaintiff;

h. allowing prosecutors to proceed with prosecutions of persons accused of assaulting police based on the verbal and investigative reports from police alone without conducting any independent investigation and/or analysis of the incident;

i. allowing prosecutors to initiate improper prosecutions without holding those prosecutors accountable for their actions; and

> j.  such other and further instances of institutional indifference and wrongdoing to be proved at trial.

93. Upon information and belief, the STATE OF NORTH CAROLINA and Defendant CRUMP failed to properly train Guilford County District Attorney staff including prosecutors like ENOCHS to do the following:

> a.  be certain that probable cause exists for any prosecution before initiating that prosecution;

> b.  carefully and impartially obtain and review all evidence before initiating a prosecution against the potential victim of excessive force by police;

> c.  share vital and potentially exonerating evidence, including BWC footage, with persons who are being prosecuted for altercations with police where excessive force may have been used;

> d.  carefully consider the constitutional rights of persons like Plaintiff who have been involved in altercations with police where excessive force was potentially used;

> e.  prior to prosecuting persons like Plaintiff involved in altercations with police, review all available BWC footage;

> f.  prosecute officers who have used excessive force, including unwarranted lethal force;

> g.  undertake independent investigations into police shooting incidents before initiating prosecutions against the victims;

> h.  prohibit prosecutors from pursuing prosecutions against persons accused of assaulting police on an understanding that if the defendant succeeds in obtaining the right to BWC footage then the charge will be dismissed;

27

i.  requiring prosecutors to carefully consider whether they have probable cause to initiate a prosecution;

j.  requiring prosecutors to know the law, including *Williams v. Strickland*, 917 F.3d 763 (2019) before prosecuting people who have been shot my police while driving a car; and

k.  other such training that the defendant should have provided but did not as will be proved at trial.

94. The defendants' wrongdoing described in this claim constitutes a deliberate indifference to protecting the constitutional rights of Plaintiff HAIRSTON and persons like her.

95. The behaviors described herein constitute a reckless indifference to protecting the constitutional rights of people like Plaintiff HAIRSTON. Those behaviors were a moving force and proximate cause of the violations of Plaintiff HAIRSTON's clearly established constitutional rights and of the injuries and damages she sustained.

96. Upon information and belief, the Defendants named in this claim deprived Plaintiff HAIRSTON of her clearly established constitutional rights knowingly, maliciously, and with conscious and reckless disregard of the constitutional rights and safety of Plaintiff and others like her.

97. Plaintiff HAIRSTON is entitled to recover her compensatory and consequential damages of these defendants, jointly and severally.

98. Plaintiff HAIRSTON is entitled to recover punitive damages of these defendants, jointly and severally.

28

### THIRD CLAIM FOR RELIEF
**Violation of North Carolina State Constitution**
**(against all defendants)**

99. Plaintiff HAIRSTON realleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein

100. The acts and omissions of the defendants violated Plaintiffs clearly established constitutional rights under the Constitution and laws of the State of North Carolina, including the Law of the Land provision contained therein.

101. As a direct and proximate result of the defendants' violation of the Plaintiffs clearly established constitutional rights, Plaintiff HAIRSTON experienced the injuries and damage described above.

102. Upon information and belief, the defendants acted willfully, wantonly, and with reckless disregard of the Plaintiff's constitutional rights and safety when they violated those rights.

103. Plaintiff HAIRSTON is entitled to recover both compensatory, consequential, and punitive damages of the defendants, jointly and severally.

### FOURTH CLAIM FOR RELIEF
**Assault and Battery**
**(against defendants Talley, the Greensboro defendants, Scott, and James)**

104. Plaintiff Hairston realleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

105. Defendant TALLEY pointed a firearm at Plaintiff HAIRSTON and unjustifiably used deadly force against her where such force was objectively excessive and unreasonable under the circumstance.

106. Defendant TALLEY's intentional act as described above put Plaintiff HAIRSTON in actual, subjective apprehension of immediate harmful or offense contact.

29

107. Plaintiff HAIRSTON's apprehension was objectively reasonable under the circumstances in that a person of ordinary prudence under the same or similar circumstances would have believed that harmful or offensive contact was about to occur.

108. TALLEY's assault and battery of Plaintiff HAIRSTON was unreasonable and unlawful.

109. When Defendant TALLEY shot Plaintiff HAIRSTON in the back of the head, Plaintiff did not pose any threat to TALLEY or any other police officer.

110. Defendant TALLEY acted with a depraved indifference to human life and with conscious disregard for the safety of the general public including the Plaintiff. His actions constituted an unwelcome and unprivileged touching of Plaintiff and were undertaken in bad faith and with malice.

100. As a direct and proximate result of the assault and battery described herein, Plaintiff HAIRSTON suffered the injuries and damages previously described.

101. At the time of the assault and battery described herein, Defendant TALLEY was acting in the course and scope of his employment with the GREENSBORO DEFENDANTS and was carrying out work duties for his employer. As such, the GREENSBORO DEFENDANTS and Defendants SCOTT and JAMES, in their capacities as Chiefs of Police for the GPD, are liable for the imputed actions of TALLEY pursuant to agency principles including but not limited to respondeat superior and vicarious liability.

102. Plaintiff HAIRSTON is entitled to recover of the defendants named in this claim, jointly and severally, all compensatory and consequential damages she sustained as well as punitive damages.

# FIFTH CLAIM FOR RELIEF
## Negligence and Gross Negligence
### (against Talley, Greensboro defendants, Palmenteri, Scott, and James)
.

103. Plaintiff Hairston realleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

104. The GREENSBORO DEFENDANTS, TALLEY, PALMENTERI, SCOTT, and JAMES all owed a duty of care to Plaintiff HAIRSTON to exercise reasonable care in the management and disposition of their police services.

105. In the alternative to Plaintiff's previous allegations that the defendants named in this claim violated Plaintiff's constitutional rights purposely, recklessly, callously, maliciously, and in a depraved manner, Plaintiff HAIRSTON alleges that the GREENSBORO DEFENDANTS, PALMENTERI, SCOTT, and JAMES were negligent in, among other things, the following ways:

   a. TALLEY negligently failed to learn under what circumstances a police officer may use lethal force including failing to learn that an officer may never shoot into a vehicle that has passed him or is passing him;

   b. TALLEY negligently decided to shoot Plaintiff HAIRSTON when she had driven past him;

   c. TALLEY negligently failed to use a less intrusive means of engaging with Plaintiff than shooting into her vehicle, means such as following Plaintiff or radioing for other officers to follow her;

   d. TALLEY negligently failed to recognize that he had no probable cause for shooting Plaintiff;

e. TALLEY negligently claimed that he shot Plaintiff through the front windshield when in fact he shot her through the back of the head from behind through the driver's side window;

f. TALLEY negligently failed to consider that no crime had been committed during the disturbance at the apartments and that no special circumstance existed that entitled him to use lethal force to stop Plaintiff from leaving;

g. TALLEY negligently failed to realize that he was not in a self-defense position when he fired and that any right to use lethal force was instantly eliminated once he was no longer in a self-defense position (it being expressly denied that TALLEY was ever in a self-defense position);

h. PALMENTERI negligently failed to conduct an accurate and impartial investigation into the shooting;

i. PALMENTERI negligently concluded that TALLEY was in a self-defense position when he fired at Plaintiff when the physical evidence that PALMENTERI saw proved that TALLEY was not in a self-defense position when he fired;

j. PALMENTERI negligently failed to fairly and properly consider TALLEY's statement that he fired through the front of the Plaintiff's windshield in self-defense, *to wit*, TALLEY was grossly mistaken because he actually shot Plaintiff from behind after she passed him;

k. PALMENTERI negligently failed to fairly and properly consider TALLEY'S statement that he fired two more shots at Plaintiff after she had passed further by him in order to protect an approaching officer where there was no officer approaching;

l.  PALMENTERI negligently failed to fairly and properly consider that BWC body cam footage showed that TALLEY was not in a self-defense position when he shot plaintiff in the back of the head;

m.  PALMENTERI negligently failed to consider that the right to use lethal force in self-defense ends instantly when the officer is out of danger;

n.  PALMENTERI negligently failed to fairly and properly consider Investigator Reed's absurd accident reconstruction conclusion that the accident could have been avoided if Plaintiff had reduced her speed;

o.  PALMENTERI negligently chose to refer a case against Plaintiff to the District Attorney's office for prosecution;

p.  Upon information and belief, PALMENTERI negligently failed to show all evidence to the District Attorney when he endorsed a prosecution against Plaintiff for felony assault on a police officer;

q.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to train TALLEY on the use of lethal force when they hired him;

r.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to conduct regular field exercises on lethal force so officers like TALLEY would know when it could be used and would understand that the right instantly ends when the officer is no longer at risk of immediate serious injury or death;

s.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to create proper rules and protocols for when an officer can use lethal force;

33

t.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to establish a bright line rule, and train on that rule, prohibiting officers from shooting into passing vehicles;

u.  the GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to establish rules requiring officers to use less intrusive means with individuals who disobey an officer's order;

v.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to establish rules requiring their investigators who assess police shootings to conduct those investigations impartially and subject to review;

w.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to properly investigate the shooting involving TALLEY and Plaintiff;

x.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to review the investigative conclusions reached by PALMENTERI and to determine that those conclusions were erroneous;

y.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to conduct a review of PALMENTERI's decision to refer Plaintiff to prosecutors for a felony assault on an officer charge;

z.  The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to establish proper rules and protocols for determining when victims of police lethal force should be prosecuted;

aa. The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to require that BWC body cam footage be provided to a prosecutor for his or

her use in determining whether a charge should be pursued against the victim of police lethal force;

    bb. The GREENSBORO defendants and defendants SCOTT and JAMES negligently failed to establish a committee or outside group to investigate police shootings for the purpose of deciding whether a charge against the victim should be referred to prosecutors;

    cc. The defendants referenced in this claim were otherwise negligent in other and further ways to be proved at trial.

106. The acts and omissions described above were undertaken with a reckless indifference to the rights and safety of Plaintiff and were willful and wanton. Such acts accordingly constitute gross negligence.

107. As a direct and proximate result of the negligence and gross negligence of TALLEY, the GREENSBORO DEFENDANTS, PALMENTERI, SCOTT, and JAMES, Plaintiff HAIRSTON experienced the injuries and damages previously described. Plaintiff is accordingly entitled to recover damages, both compensatory and punitive, from said defendants, jointly and severally.

### SIXTH CLAIM FOR RELIEF
**False Imprisonment**
**(against Greensboro defendants, Talley, Palmenteri, Scott, and James)**

111. Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if fully set forth herein.

112. The defendants named in this claim effectuated the illegal restraint of Plaintiff HAIRSTON by taking actions to restrain her after the shooting incident occurred. More particularly, without probable cause defendants handcuffed Plaintiff to her hospital bed and

held her under arrest while she was hospitalized. Defendants based their false imprisonment of Plaintiff on a false probable cause basis.

113. Defendants used force and the threat of force against Plaintiff in order to illegally restrain her.

114. Plaintiff's did not consent to being restrained and was restrained unlawfully against her will.

115. Plaintiff suffered severe emotional distress as a direct and proximate result of defendants' actions as well as other and further damages to be proved at trial.

116. Plaintiff is entitled to recover damages of the defendants named in this claim, jointly and severally, for defendants' false imprisonment of Plaintiff.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (against Talley, Palmenteri, Greensboro defendants, Scott, and James)

117. Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if fully set forth herein.

118. The acts and omissions committed by the defendants named in this claim were extreme and outrageous. Those acts and omissions are detailed in the prior sections of this Complaint.

119. The extreme and outrageous acts and omissions committed by these defendants were intended to cause Plaintiff severe emotional distress. More particularly, any person in the position of defendants would have known that the actions they undertook would cause any person in Plaintiff's position severe emotional distress.

120. The extreme and outrageous conduct of the defendants did in fact proximately cause Plaintiff HAIRSTON to experience severe emotional distress.

121. Defendants owed a duty to Plaintiff and to others similarly situated to refrain from engaging in the type of conduct that produced the severe emotional distress that defendants caused Plaintiff to experience.

122. Plaintiff HAIRSTON is entitled to recover damages of defendants, jointly and severally, for the severe emotional distress she experienced and for all other related damages arising out of that severe emotional distress.

## EIGHTH CLAIM FOR RELIEF
### Negligent Infliction of Severe Emotional Distress
### (against Talley, Palmenteri, Greensboro defendants, Scott, and James)

123. Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if fully set forth herein.

124. In the alternative, the defendants named in this claim negligently engaged in conduct that was reasonably foreseeable to cause plaintiff severe emotional distress.

125. Any reasonable person in the position of the defendants would have known that the actions they committed would produce severe emotional distress for a person in Plaintiff's position.

126. Defendants' wrongful conduct did in fact cause Plaintiff to experience severe emotional distress.

127. Defendants owed a duty to Plaintiff and others similarly situated to refrain from negligently engaging in the type of conduct that produced the severe emotional distress that defendants caused the Plaintiff to experience.

128. Plaintiff HAIRSTON is entitled to recover damages of these defendants, jointly and severally, for the severe emotional distress defendants caused her and for other damages Plaintiff experienced arising out of that distress.

37

## NINTH CLAIM FOR RELIEF
### Civil Conspiracy Under 42 U.S.C. §1983 and North Carolina
### (against all defendants)

129. Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if fully set forth herein.

130. Upon information and belief, all defendants named in this lawsuit agreed and conspired with each other to do unlawful acts in unlawful ways to the harm of Plaintiff, all as more particularly described above.

131. Upon information and belief, the defendants undertook their unlawful acts with the purpose and intent of protecting defendant TALLEY and the GREENSBORO DEFENDANTS from liability for shooting Plaintiff when the defendants knew that the law prohibits officers from shooting into cars that are passing or have passed that officer.

132. Upon information and belief, among other things defendants TALLEY, the GREENSBORO DEFENDANTS, PALMENTERI, SCOTT, and JAMES agreed among themselves, through words and actions both express and implied, to create a false and unlawful narrative that Plaintiff was to blame for the shooting; that TALLEY was in a self-defense position when he shot Plaintiff and was blameless; that the physical evidence proving that TALLEY was not in a self-defense position when he shot Plaintiff from behind should be ignored; that TALLEY's false statement that he shot through the front windshield of Plaintiff's oncoming vehicle should be ignored; that TALLEY's statement that he shot at Plaintiff two more times after she had passed him in order to protect another officer who was not actually there should be ignored; that the cause of the accident involving Plaintiff's vehicle was her failure to reduce speed; that the BWC footage supported the defendants' conclusion that TALLEY was in a self-defense position and that

38

Plaintiff was to blame for the shooting when this was untrue; that Plaintiff should be prosecuted for felony assault on a police officer; that Plaintiff would not be given the BWC footage either before or during her prosecution; and to otherwise agree to take unlawful steps for an unlawful purpose.

133. Upon information and belief, among other things defendants STATE OF NORTH CAROLINA, ENOCHS, and CRUMP unlawfully agreed among themselves and with the other defendants to prosecute Plaintiff for Felony Assault on a Government Officer with a Deadly Weapon without having probable cause to do so; to prosecute plaintiff as a means of continuing to perpetuate the false narrative that Plaintiff was to blame for the shooting rather than defendant TALLEY; to prosecute Plaintiff in order to protect the law enforcement defendants; to ignore the BWC footage that did not support a prosecution; to refuse to provide the BWC footage to the Plaintiff; to dismiss the charge against Plaintiff rather than provide Plaintiff the BWC footage; and to otherwise agree to take unlawful steps for an unlawful purpose.

134. Upon information and belief, all defendants took actual, concrete steps in furtherance of their agreement to achieve an unlawful purpose through unlawful means.

135. The unlawful acts undertaken by defendants in the furtherance of their conspiracy proximately caused the injuries and damages to Plaintiff previously described in this Complaint.

136. Each defendant is by operation of law equally responsible for all acts and omissions committed by every other defendant in the furtherance of the conspiracy.

137. The civil conspiracy described herein applies equally to all claims asserted in this Complaint including the 42 USC §1983 claims where defendants conspired to deprive

Plaintiff of her clearly established constitutional rights and the state law claims where defendants conspired to commit the wrongs described in those claims.

138. Plaintiff is entitled to recover of all defendants, jointly and severally, compensatory and punitive damages for all wrongdoing and harm caused by defendants' conspiracy on all claims listed in this lawsuit where a civil conspiracy was involved.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Paulickia Jazzmun Hairston prays the Court as follows:

a. That Plaintiff have and recover compensatory and consequential damages, including but not limited to emotional distress, permanent injury, loss of quality of life, scarring, pain and suffering, medical expenses, and loss of income in an amount in excess of $10,000,000.00 from all defendants, jointly and severally;

b. That the Plaintiff have and recover punitive damages on all claims for which punitive damages are recoverable in an amount in excess of $2,000,000.00;

c. That the Plaintiff have and recover her attorney's fees pursuant to 42 U.S.C. § 1988;

d. That the Plaintiff have and recover her attorneys' fees under all applicable state law;

e. That the costs of this action be taxed to the defendants, jointly and severally; and

f. For such other and further amounts and relief as the Court may deem just and proper.

## TRIAL BY JURY REQUESTED

Respectfully submitted, this the 30th day of June, 2022

/s/THOMAS H. JOHNSON, JR.
Attorney for Plaintiff
301 S. Elm Street, Ste. 18
P.O. Box 2318
Phone: 336.265.1000
N.C. State Bar# 12175
thomasjohnson2857@gmail.com


/s/ TODD ALLEN SMITH
Attorney for Plaintiff
Smith Giles PLLC
110 South Maple Street
Graham, NC 27253
Phone: 336-222-7735
N.C. State Bar # 26758
taslaw@triad.rr.com


/s/ ROBERT C. GILES, II
Robert C. Giles, II
Smith Giles PLLC
110 South Maple Street
Graham, NC 27253
Phone: 336-222-7735
N.C. State Bar # 28539
robert@smithgileslaw.com


/s/ EDWIN W. BOWDEN
Attorney for Plaintiff
Bowden Gardner & Hill, P.C.
119 Brookstown Ave, Suite 401
Winston-Salem, NC 27101
Phone: 336-714-2097
N.C. State Bar # 16563
ed@bowdengardner.com

42